**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**


DEBORAH WINEBERGER,

     Plaintiff,

v.                                                                     Case No:  5:14-cv-653-Oc-30PRL

RACETRAC PETROLEUM, INC.,

     Defendant.

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant RaceTrac Petroleum, Inc.'s

Motion for Summary Judgment (Doc. 35), Plaintiff's response in opposition (Doc. 44),

Defendant's Motion to Strike Portions of Plaintiff's Response to Defendant's Motion for

Summary Judgment and Plaintiff's Affidavit (Doc. 47), and Plaintiff's response in

opposition (Doc. 48).  The Court, having considered the motions, responses, and record

evidence, and being otherwise fully advised in the premises, concludes that Defendant's

motion to strike should be denied as moot and Defendant's motion for summary judgment

should be granted.

## RELEVANT FACTS

Plaintiff, who is over fifty-five years old, was employed as a part-time associate

store clerk with Defendant from some unspecified time in 2008 until her termination on

May 27, 2013.  Plaintiff began working for Defendant at store number 109 in Spring Hill,

Florida, ("Store 109") where her direct supervisor was Store Manager Sarah Lamont. When Plaintiff asked Ms. Lamont why she was not being placed on the promotions list, Ms. Lamont responded that "older people don't catch on quite as fast as us younger people." On April 11, 2011, Defendant transferred Plaintiff, upon her request, from Store 109 to store number 195 in Homosassa, Florida, ("Store 195") so Plaintiff could be closer to her home and her ailing husband. Mike Kelly was the store manager of Store 195. Although Plaintiff asked Mr. Kelly on several occasions to place her on the promotions list, Mr. Kelly did not recommend Plaintiff for promotion.

Plaintiff worked the second shift, beginning around 2:30 p.m., on Friday, May 24, 2013. At the beginning of her shift, Plaintiff purchased a package of gum and a package of Starburst candy. Later that day, Marlene Caponi, the swing manager who worked the second shift with Plaintiff, observed Plaintiff take a second package of Starburst candy from the display shelf in front of the cash register. Ms. Caponi observed Plaintiff cupping the candy in her hand in what she believed was an attempt to conceal it. Ms. Caponi watched Plaintiff return to her register, open the package of candy, and consume the candy while working. After Plaintiff's shift ended that day, Ms. Caponi saw Plaintiff leave the store. She never saw Plaintiff pay for the second package of Starburst candy.

Ms. Caponi believed that Plaintiff stole the candy and reported the incident to Mr. Kelly. The next day, May, 25, 2013, Mr. Kelly reviewed video footage from the store and register receipts for May 24, 2013. After reviewing the video footage and register receipts, Mr. Kelly concluded that Plaintiff took the second package of Starburst candy without paying for it. Mr. Kelly contacted Jason Kessel, the operations supervisor, to inform him

of the incident.  Mr. Kelly shared with Mr. Kessel what he observed based on his review of the video footage and register receipts and expressed his opinion that Plaintiff had stolen the candy.

Mr. Kessel independently reviewed the video footage and register receipts for May 24, 2013, and reached the conclusion that Plaintiff consumed the second package of Starburst candy without paying for it.  As a result, Mr. Kessel informed Scot Munn, the director of operations for the West Florida region, and recommended Plaintiff's discharge because he believed that Plaintiff committed theft.  Mr. Munn then reviewed the video footage and determined, based on the information Mr. Kessel provided, that Plaintiff committed theft by consuming store inventory without paying for it.  Mr. Munn, in conjunction with former Human Resources Manager Andrea GioVannelli, made the decision to discharge Plaintiff because he believed Plaintiff had committed theft.  Mr. Munn and Ms. GioVannelli were the only individuals involved in the decision to ultimately terminate Plaintiff, and Mr. Munn did not know Plaintiff's age when he made the decision to terminate her employment with Defendant.

Mr. Munn instructed Mr. Kessel to discharge Plaintiff because she committed theft. Mr. Kessel, in turn, instructed Mr. Kelly to discharge Plaintiff.  On Monday, May 27, 2013, when Plaintiff arrived for her shift, she noticed that her shifts for the remainder of the week had been crossed out.  Mr. Kelly and Field Trainer Spencer Wilson met with Plaintiff. During the meeting, Mr. Kelly asked Plaintiff if she had taken a second package of Starburst candy without paying for it.  Plaintiff asserted that she paid for both packages of

candy, but she offered to pay for the second package of candy again.[1]   After hearing

Plaintiff's explanation, Mr. Kelly still believed that she stole the candy.   Based on the

instructions to discharge Plaintiff for theft, Mr. Kelly terminated Plaintiff's employment.

Several weeks after Plaintiff was discharged, on June 13, 2013, Defendant hired

Candice Honert as Plaintiff's replacement.  Mr. Munn, Mr. Kessel, and Mr. Kelly were not

involved in the selection of Ms. Honert as the new associate store clerk.  Rather, Ms. Honert

was selected by Defendant's recruitment and engagement specialist.

Plaintiff asserts that she paid for the second package of Starburst candy and a

package of cigarettes after her shift ended on May 24, 2013, and that Ms. Caponi was

operating the register when Plaintiff paid for the candy.  Plaintiff believes that Mr. Kelly

wanted a reason to discharge her from Defendant's employment due to her age and

disability.  Consequently, Plaintiff initiated this action against Defendant alleging age and

disability discrimination in violation of the Florida Civil Rights Act ("FCRA"), Fla. Stat.

§ 760.10(1)(a).  Following several motions to dismiss and opportunities to amend her

complaint, Plaintiff's claim for disability discrimination was dismissed for failure to state

a claim.  Plaintiff's claim for age discrimination remains.  Defendant seeks summary

judgment arguing that Plaintiff cannot establish a prima facie case of age discrimination,

and, even if she could, Defendant has proffered a legitimate, nondiscriminatory reason for

her termination.

---

[1]Plaintiff originally testified at her deposition that she did not offer to pay for the second package of Starburst candy because she knew she had already paid for it, but she later testified that she might have offered to pay for it.

## DISCUSSION

### I. Motion to Strike

As a preliminary matter, Defendant moves to strike portions of Plaintiff's response and affidavit filed in opposition to Defendant's motion for summary judgment. (Doc. 47). More specifically, Defendant argues that information regarding statements made by former employee Staci Hedge should be stricken because it is hearsay, not based on Plaintiff's personal knowledge, and would be inadmissible at trial.

Regardless of the merits of Defendant's arguments, even if the Court did not strike the portions of the affidavit or response concerning Ms. Hedge's situation, as discussed in further detail below, its conclusion that Defendant is entitled to summary judgment would remain the same. Accordingly, Defendant's motion to strike should be denied as moot.

### II. Motion for Summary Judgment

#### A. Standard

Motions for summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted); Fed. R. Civ. P. 56(c). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this

analysis, the court must examine the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49.

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir.1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## B. Analysis

Defendant argues that Plaintiff cannot establish a prima facie case of age discrimination under the FCRA. And, even if Plaintiff could establish a prima facie case, Defendant contends that it has offered a legitimate, nondiscriminatory reason for Plaintiff's

discharge.  The FCRA prohibits, among other things, discrimination based on age.[2]  Fla.

Stat. § 760.10(1).  "[A] plaintiff bringing a disparate-treatment claim pursuant to the

[FCRA] must prove, by a preponderance of the evidence, that age was the 'but-for' cause

of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S.

167, 180 (2009).  In other words, a plaintiff must prove that, regardless of other possible

contributing factors, the employee's age was the determinative factor, without which the

employer would not have taken the adverse action.  *Id.* at 177.

Where, as here, there is no direct evidence of discrimination, a plaintiff must prove

her claim through the *McDonnell Douglas* burden-shifting framework.  *See McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Chapman v. AI Transp.*, 229

F.3d 1012, 1024 (11th Cir. 2000) (en banc) (applying the *McDonnell Douglas*

burden-shifting framework to age-discrimination claims).  Under this framework, Plaintiff

must first establish a prima facie case of age discrimination, which requires showing (1)

Plaintiff was a member of a protected class; (2) Plaintiff was subjected to adverse

employment action, (3) Defendant replaced Plaintiff with a younger individual, and (4)

Plaintiff was qualified to perform the job.  *See McDonnell Douglas Corp.*, 411 U.S. at 802;

*Chapman*, 229 F.3d at 1024.  If Plaintiff establishes a prima facie case, the burden then

shifts to Defendant to articulate some legitimate, nondiscriminatory reason for the

employment action.  *Chapman*, 229 F.3d at 1024.  If Defendant meets this burden of

---

[2]"[A]ge-related discrimination actions under the FCRA are analyzed under the same framework[] as the . . . ADEA." *Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1266 (11th Cir. 2014) (citing *Zaben v. Air Prods. & Chems., Inc.,* 129 F.3d 1453, 1455 n.2 (11th Cir. 1997)).

production, the presumption of discrimination raised by Plaintiff's prima facie case is rebutted. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981). Plaintiff must then show that Defendant's proffered legitimate, nondiscriminatory reason is pretextual. *Id.*

### 1. Prima Facie Case of Age Discrimination

Defendant asserts that Plaintiff's claim must fail because the ultimate decision-maker, Scot Munn, was unaware of Plaintiff's age. "Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent." *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1262 (11th Cir. 2001) (citing *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 800 (11th Cir. 2000)). Mr. Munn asserted that he was not aware of Plaintiff's age when he made the decision to terminate her employment with Defendant. (Munn Decl. at 2-3). Plaintiff counters that Ms. Caponi, who originally reported the incident to Mr. Kelly, was aware of Plaintiff's age and knew that the penalty for stealing was termination. (Doc. 44 at 8-9). Thus, under a "cat's paw" theory, Plaintiff alleges that Ms. Caponi's discrimination against Plaintiff based on her age can be imputed to Mr. Munn. (*Id.*).

Plaintiff's cat's paw argument fails for several reasons. First, Plaintiff has presented virtually no evidence that Ms. Caponi harbored discriminatory animus against Plaintiff based on her age. Ms. Caponi allegedly told Plaintiff: "You act like you're 80 years old you move so slow." (Wineberger Depo. at 169). The comment, however, appears to be directed at Plaintiff's speed, not at her age. Commentary on Plaintiff's speed is not

commentary on her age and cannot be imputed as such simply because Plaintiff perceived the comment as directed at her age.

Second, even if Plaintiff could demonstrate that Ms. Caponi harbored discriminatory animus, Plaintiff has not demonstrated that Ms. Caponi's actions were a determinative factor in Mr. Munn's ultimate decision to discharge Plaintiff. "Under the cat's paw doctrine, a plaintiff may establish but-for causation if she shows that the unbiased decision-maker . . . followed a 'biased recommendation without independently investigating the complaint against the employee.'" *Godwin v. WellStar Health Sys., Inc.*, 615 F. App'x 518, 528 (11th Cir. 2015) (quoting *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999)). To proceed under a cat's paw theory in an age discrimination case, Plaintiff must demonstrate that the biased individual's action had a determinative influence on the ultimate decision or was a determinative cause. *Id.* at 529.

Mr. Kelly, Mr. Kessel, and Mr. Munn each independently reviewed the video footage and determined that Plaintiff did not pay for the second package of Starburst candy. (Kelly Decl. at 4; Kessel Decl. at 2; Munn Decl. at 2). Mr. Kelly asserted that he reviewed the video footage which showed Plaintiff purchasing the first package of Starburst candy and taking a second package of Starburst candy, but did not show her paying for the second package of Starburst candy. (Kelly Decl. at 4). In her affidavit, Plaintiff avers that a review of the video footage shows that Plaintiff purchased Starburst candy from Ms. Caponi on May 24, 2013. (Wineberger Aff. at 2). However, it is undisputed that Plaintiff purchased at least one package of Starburst candy; at issue is whether Plaintiff purchased a second package of Starburst candy. Plaintiff does not aver that the video footage shows her

purchasing two packages of Starburst candy.  Mr. Kelly and Mr. Kessel also reviewed the register receipts for that day which show that Plaintiff purchased only one package of Starburst candy.  (Kelly Decl. at 4; Kessel Decl. at 2).  Because upper management conducted an independent review to determine whether Plaintiff took merchandise without paying for it and did not merely "rubber stamp" Ms. Caponi's accusation, Ms. Caponi did not have a "determinative influence" on the ultimate decision to discharge Plaintiff.

Mr. Munn was not aware of Plaintiff's age.  Although Ms. Caponi reported the incident, management conducted a neutral review of the evidence and made a determination that Plaintiff took store merchandise without paying for it.  Plaintiff's "cat's paw" theory therefore fails.  Because Plaintiff cannot demonstrate that the ultimate decision-maker was aware of her protected status and because she cannot demonstrate that discrimination was imputed to management under a cat's paw theory, she cannot establish a prima facie case of age discrimination.[3]

### 2. Pretext

Even if Plaintiff could demonstrate a prima facie case of age discrimination, Defendant argues that Plaintiff cannot demonstrate that the proffered legitimate, nondiscriminatory reason for her discharge was pretext.[4]  To establish pretext, Plaintiff must show that Defendant's "'explanation is unworthy of credence.'" *Jackson v. Ala. State*

---

[3]Defendant also argues that Plaintiff cannot demonstrate a prima facie case of age discrimination because Plaintiff cannot show that Defendant sought to replace Plaintiff with a younger individual. (Doc. 35 at 18-19).  Because the record shows that the ultimate decision-maker was unaware of Plaintiff's age, and Plaintiff has not rebutted that evidence, the Court need not address this argument.

[4]The parties appear to agree that Defendant offered a legitimate, nondiscriminatory reason for Plaintiffs discharge.

*Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting *Tex. Dep't of Cmty. Affairs*, 450 U.S. at 256). This requires showing "*both* that the reason was false, *and* that discrimination was the real reason" for the adverse action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (internal quotation marks omitted). Plaintiff may show pretext by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendant's proffered reason. *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (internal quotation marks omitted). Plaintiff may also produce other evidence "which permits the jury to reasonably disbelieve the employer's proffered reason." *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1079 (11th Cir. 2003) (internal quotation marks omitted).

Plaintiff asserts that she paid for the second package of Starburst candy. But Plaintiff's assertion, even if true, is insufficient to establish pretext. An "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for discriminatory reason." *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984). The Court's inquiry, therefore, is limited to whether Defendant believed Plaintiff engaged in misconduct and whether this belief was the reason behind Plaintiff's discharge. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).

Defendant articulated a reasonable factual basis upon which it decided to discharge Plaintiff—Defendant believed that Plaintiff took merchandise without paying for it. Plaintiff asserts that Defendant's proffered reason is merely pretext because (1) Defendant treated younger employees more favorably by giving them more hours, (2) Defendant

11

treated younger employees more favorably by placing younger employees who were significantly less experienced than Plaintiff on the promotions list, (3) Defendant treated Staci Hedge, a younger employee, more favorably by transferring her after she was accused of theft rather than discharging her, and (4) Defendant sought to replace Plaintiff with a younger employee.  (Doc. 20 at 6; Doc. 44 at 2, 3, 5).

First, Plaintiff asserts that Mr. Kelly reduced her hours beginning January 2013 because he wanted her to leave so he could replace her with a younger employee.  (Doc. 20 at 6; Wineberger Depo. at 63, 177-78).  Plaintiff asserted that her hours were reduced to fifteen or sixteen hours a week.  (Wineberger Depo. at 64, 145, 177).  Plaintiff's assertion is incorrect.  Defendant's time records show that from January 2013 until her termination on May 27, 2013, (a twenty-two week period) Plaintiff worked an average of 24.68 hours per week.  (Decl. of Glass, Ex. I).  In that twenty-two week period, Plaintiff worked less than twenty hours on only two occasions.  (*Id.*).  For the twenty-two weeks prior to January 2013, Plaintiff worked an average of 29.10 hours per week.  (*Id.*).

While Plaintiff's average weekly hours were slightly reduced during this time period, Plaintiff has produced no evidence demonstrating that younger employees were assigned or worked more hours.  Mr. Kelly explained that employees who worked the second shift, the shift Plaintiff regularly worked, were scheduled to work less hours than employees who worked the first or third shifts.  (Kelly Decl. at 2).  According to Mr. Kelly, he scheduled Plaintiff for the second shift because he believed she exclusively wanted to work the second shift.  (*Id.*).  Plaintiff did not work fewer hours than other employees who

also worked the second shift.  (*Id.*).  Plaintiff has presented no evidence to the contrary

beyond her conclusory belief that younger employees received more hours than she did.

Plaintiff next attempts to demonstrate pretext by arguing that Defendant treated

younger employees more favorably by placing them on the promotions list but refusing to

place Plaintiff on the promotions list.  (Doc. 44 at 2).  According to Plaintiff, although she

had been working for Defendant for almost five years and repeatedly asked to be placed

on the promotions list, Mr. Kelly would not place her on the list and would give her the

"runaround" when she asked to learn new skills.  (Winberger Depo. at 70, 74).  On the

other hand, Plaintiff observed Mr. Kelly offer to place younger employees who had only

been employed with Defendant for several months on the promotions list.  (*Id.* at 70, 74-75,

136).

Mr. Kelly explained that Plaintiff was not placed on the promotions list because he

believed that she was unwilling to learn difficult managerial tasks.  (Kelly Decl. at 2).  Mr.

Kelly also noted that Plaintiff was not placed on the promotions list due to her performance.

Namely, Mr. Kelly believed that Plaintiff lacked a sense of urgency and failed to take

initiative to perform work on her own without being told what to do.  (*Id.* at 2-3).  Thus,

Defendant articulated a legitimate reason for not recommending Plaintiff for promotion.[5]

Regardless, assuming Plaintiff could demonstrate that Mr. Kelly did not place her

on the promotions list due to her age, Mr. Kelly did not make the ultimate decision to

---

[5]Plaintiff asserts that Mr. Kelly's opinion was based on reports from Ms. Caponi, who demonstrated bias against Plaintiff based on her age.  (Doc. 44 at 9).  As discussed previously, Plaintiff has not demonstrated that Ms. Caponi was biased.  And, even if she had, Mr. Kelly stated that he formed this opinion based on his own observations of Plaintiff's performance and the reports of other employees, including Ms. Caponi. (Kelly Decl. at 3).

discharge Plaintiff.  Mr. Munn made the determination to discharge Plaintiff following an independent review of the evidence.

Plaintiff next asserts that Ms. Hedge, who is younger than Plaintiff, was treated more favorably than Plaintiff because Ms. Hedge engaged in theft and was merely transferred rather than discharged.  (Doc. 44 at 5).  Specifically, Plaintiff alleges that she was shown pictures of merchandise allegedly stolen by Ms. Hedge by another employee and was informed that Ms. Hedge had been temporarily suspended pending an investigation of the activity.  (Wineberger Depo. at 181-83; Wineberger Aff. at 3-4). Although Ms. Hedge told Plaintiff that she had been suspended for incorrectly ringing up cigarettes, Plaintiff did not believe her.  (Wineberger Depo. at 205-06).  Plaintiff admitted that she was unaware of Defendant's ultimate determination following its investigation of Ms. Hedge.  (*Id.* at 183).  On the other hand, Mr. Kessel stated that Ms. Hedge was investigated for theft for incorrectly ringing up cigarettes.  (Kessel Decl. at 4).  After its investigation, Defendant concluded that it could not determine whether Ms. Hedge acted deliberately.  (*Id.*).  Because it could not be determined whether Ms. Hedge stole the cigarettes, Mr. Kessel did not recommend her discharge.  (*Id.* at 4-5).  Instead, Ms. Hedge was given a warning and transferred to another store.  (*Id.* at 5).

Ms. Hedge is not similarly situated to Plaintiff.  Unlike Plaintiff's situation, where Defendant made a determination that Plaintiff committed theft, Defendant never determined that Ms. Hedge committed theft.  Plaintiff appears to refer to a separate incident of theft, but there is no evidence that Defendant was aware of that incident or conducted an investigation related to that incident.  (*Id.* at 5).  Accordingly, Plaintiff has not

demonstrated that she and Ms. Hedge were similarly situated and that Defendant treated Ms. Hedge more favorably.

Last, Plaintiff offers no evidence beyond her own conclusory belief that Defendant sought to replace Plaintiff with a younger employee. Plaintiff asserts that Mr. Kelly favored younger employees and wanted to replace Plaintiff with a younger employee named Kelly or Amanda. (Wineberger Depo. at 59, 62, 173). But even if that were true, it is undisputed that Defendant's recruitment and engagement specialist hired Candice Honert as Plaintiff's replacement. (Glass Decl. at 9-10). Mr. Munn, Mr. Kessel, and Mr. Kelly were not involved in the selection of the new associate store clerk. (*Id.*). In fact, Mr. Kelly did not have authority to hire employees. (Kelly Decl. at 2).

Plaintiff has not presented significantly probative evidence showing that Defendant's proffered reason for her discharge is false and that "but for" her age, Defendant would not have discharged her. Accordingly, Plaintiff has not established pretext.

## CONCLUSION

Plaintiff has not established a prima facie case of age discrimination under the FCRA. Even if Plaintiff could establish a prima facie case of age discrimination, Defendant has proffered a legitimate, nondiscriminatory reason for Plaintiff's discharge, which Plaintiff has not demonstrated was pretext. Moreover, taking all of Plaintiff's allegations together, she has failed to present "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (quoting *Silverman v. Bd.*

*of Educ.*, 637 F.3d 729, 733 (7th Cir. 2011)).  Defendant is therefore entitled to summary judgment.

Accordingly, it is therefore **ORDERED AND ADJUDGED** that:

1.  Defendant RaceTrac Petroleum, Inc.'s Motion for Summary Judgment (Doc. 35) is GRANTED.

2.  Defendant's Motion to Strike Portions of Plaintiff's Response to Defendant's Motion for Summary Judgment and Plaintiff's Affidavit (Doc. 47) is DENIED as moot.

3.  The Clerk is directed to enter final judgment in favor of Defendant, terminate any pending motions, and close the case.

**DONE** and **ORDERED** in Tampa, Florida, this 22nd day of December, 2015.

_____

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record